**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 25-129** |
| **QUINCEY MCKINLEY** | **SECTION I** |

## ORDER & REASONS

Defendant Quincey McKinley ("McKinley") lodged four objections[1] to the Presentence Investigation Report ("PSR").[2] The government timely filed a response in opposition,[3] and McKinley filed a supplemental memorandum in support of his objections.[4] Having considered the parties' briefs and the controlling caselaw, the Court **OVERRULES** McKinley's objections.

### I.    BACKGROUND

On November 14, 2025, McKinley pleaded guilty to a two-count superseding bill of information, which charged him with one count of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[5]

The PSR recommends a four-level "Chapter Four Enhancement" pursuant to U.S.S.G. § 4B1.1 ("career offender enhancement"), a two-level enhancement pursuant

---

[1] R. Doc. No. 42.
[2] R. Doc. No. 44.
[3] R. Doc. No. 49.
[4] R. Doc. No. 52.
[5] R. Doc. Nos. 32 (Notice of Rearraignment Hearing), 33 (Superseding Bill of Information).

to U.S.S.G. § 2D1.1(b)(1) for possessing a firearm, and a two-level enhancement pursuant to § 2D1.1(b)(12) for maintaining a premises for drug trafficking or manufacturing.[6]

McKinley first objects to the application of the career offender enhancement pursuant to U.S.S.G. § 4B1.1(b).[7] Specifically, he objects to his 1997 state drug conviction being counted toward the career offender enhancement because: first, he contends that "there is insufficient evidence proving that he served any portion of a term of imprisonment for his 1997 drug conviction within fifteen years of the commencement of the instant offense;"[8] and second, he argues that his 1997 state drug conviction is "categorically broader" than the federal Controlled Substances Act ("CSA") and, therefore, cannot serve as one of the two prior convictions necessary to support the enhancement.[9] McKinley similarly objects to the assessment of criminal history points for his 1997 drug conviction, pursuant to U.S.S.G. § 4A1.1(a), because he argues that there is insufficient evidence to support that the conviction falls within the fifteen-year window set forth in U.S.S.G. § 4A1.2(e).[10]

Finally, McKinley objects to the application of the enhancement in § 2D1.1(b)(12), which applies a two-level increase if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." The Court will address McKinley's objections in turn.

---

[6] R. Doc. No. 44, at 9–10.

[7] R. Doc. No. 42, at 2.

[8] *Id.*

[9] *Id.* at 3.

[10] *Id.*

## II.   LAW & ANALYSIS

### a.   McKinley's 1997 offense falls within the fifteen-year period for assessing criminal history or application of the career criminal enhancement

For purposes of assessing criminal history points, § 4A1.2(e)(1) counts "any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense." Also counted is "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(k) further explains that "revocation of probation, parole, supervised release, special parole, or mandatory release may affect the time period under which certain sentences are counted." *Id.* (cleaned up). For example, in cases of "an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence" is used. *Id.* The application notes to § 4B1.1 explain that these provisions also apply for determining which convictions count for application of the career criminal enhancement. *See* § 4B1.2 cmt. n. 3; *see also United States v. Rudolph*, 103 F.4th 356, 361 (5th Cir. 2024) ("To make a career offender designation, the Government must show that the defendant's two prior felony convictions were 'imposed within fifteen years of the defendant's commencement of the instant offense.'" (citing § 4A1.2(e)(1)).

Two of McKinley's objections involve whether his 1997 conviction falls within this fifteen-year period and, therefore, may be "counted" toward assessment of criminal history points, § 4A1.1, and the career offender enhancement, § 4B1.1.

The PSR states that McKinley was released on parole for the 1997 cocaine conviction, for which he received a fifteen-year sentence, on March 28, 2003.[11] It also states that McKinley's parole was revoked on February 23, 2006, and that he was again released on parole on May 14, 2010.[12] According to the PSR, his parole expired as to this conviction on April 6, 2014.[13]

In addition to this conviction, the PSR includes a conviction for possession of cocaine to which McKinley pleaded guilty and received four years of imprisonment on April 30, 2007.[14] As to this conviction, the PSR reports that McKinley was released on parole on May 14, 2010, and that his parole expired on April 6, 2014.[15]

McKinley argues that there is insufficient evidence to support the PSR's conclusion that he was in custody as a result of the 1997 conviction within the relevant fifteen-year look-back period.[16] According to McKinley, the records attached to the PSR do not establish "that any incarceration after November 2009 was legally attributable to the 1997 conviction rather than to Mr. McKinley's intervening 2007 possession-of-cocaine conviction."[17] Because the 2007 conviction "independently authorized incarceration and supervision extending through at least May 14, 2010," there exists in the PSR a "material ambiguity as to which conviction actually drove

---

[11] R. Doc. No. 44 ¶ 41.
[12] *Id.*
[13] *Id.*
[14] *Id.* ¶ 44.
[15] *Id.*
[16] *See* R. Doc. No. 33 (indicating that the charged conduct for the instant offense began in November 2024); *see also* R. Doc. No. 42, at 2 (arguing that "the relevant fifteen-year look-back period extends only to November 2009").
[17] R. Doc. No. 42, at 5.

Mr. McKinley's custody status after November 2009."[18] Absent evidence "attributing post-2009 incarceration specifically to the 1997 conviction," McKinley submits that the government has failed to meet its burden of establishing that the 1997 conviction may be counted toward the career offender enhancement or for criminal history points.[19]

McKinley cites the Fifth Circuit's decision in *United States v. Rudolph*, 103 F.4th 356 (5th Cir. 2024), in support of his position. In *Rudolph*, the Fifth Circuit found that the district court clearly erred when it adopted a fact contained in a PSR for which no records were presented in support. *Id.* at 361. The facts of *Rudolph* are similar to the issue before this Court.

The defendant in *Rudolph* objected to the PSR's application of the career offender enhancement when based, in part, on a 1996 drug conviction, arguing that such conviction should not be counted because it fell outside of the fifteen-year window articulated in § 4A1.2(e). The PSR had determined that the 1996 drug conviction counted because the defendant's parole had been revoked on August 19, 2004, which, based on § 4A1.2(k), was sufficient to place the 1996 drug conviction within the fifteen-year window.

The probation officer who authored the PSR "provided nothing more than the assertion that 'court records' supported her claim" that the defendant's parole associated with his 1996 conviction had been revoked in 2004. *Id.* at 359. "[N]o records

---

[18] *Id.* at 6.

[19] *See id.* at 6–7; *id.* at 6 ("At most, the records show that Mr. McKinley was in custody or under supervision during overlapping timeframes, which is insufficient.").

were presented to the district court in support of that assertion." *Id.* at 361. The defendant denied the claim that his parole had been revoked but provided no evidence in support of his denial. *See id.* Despite the lack of evidence supporting the claim in the PSR, the district court in *Rudolph* ultimately determined that the PSR was accurate. *Id.* at 360.

The Fifth Circuit held that the district court clearly erred, because it found that the government did not meet its burden of proving by a preponderance of the evidence that the 1996 conviction counted for the career offender enhancement. *Id.* at 361. It emphasized that although "generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing," the "mere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indica of reliability into facts a district court may rely upon at sentencing." *Id.* at 360–61 (citing *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) and *United States v. Melendez*, 57 F.4th 505, 509 (5th Cir. 2023)). Moreover, it was sufficient for the defendant in *Rudolph* to "alert the district court to questions regarding the reliability of the evidentiary basis for the facts contained in the PSR;" he did not need to present independent rebuttal evidence. *Id.* at 361 (quoting *United States v. Harris*, 702 F.3d 226, 231 n.3 (5th Cir. 2012)). It held:

> The "fact" that Rudolph was revoked in 2004 for his 1996 drug conviction does not have an adequate evidentiary basis, and, therefore, the district court should not have adopted this "fact" [in the PSR] as true.
>
> . . .
>
> The district court determined Rudolph's base offense level by relying on a bare assertion, unsupported by any other evidence, that he was incarcerated in 2004 as a result of a parole revocation on his 1996 drug

6

conviction. Therefore, despite Rudolph's failure to present rebuttal evidence, the Government failed to provide an adequate evidentiary basis with sufficient indicia of reliability to support its claim. The district court's adoption of this fact and application of the career offender enhancement was clear error.

*Id.* at 361–62.

Notably, as is true for McKinley, the subject PSR in *Rudolph* listed "similar parole revocation information" for a separate charge; the PSR reflected that the defendant's parole was also revoked on August 19, 2004, with respect to a separate, non-qualifying manslaughter conviction. *Id.* at 361.

When the government tried to cure the evidentiary deficiency on appeal with supplemental records from the Louisiana Department of Probation and Parole, the Fifth Circuit still found that the evidence was "inconclusive," without additional "interpretation, explanation, or extrapolation." *Id.* at 362. According to the Fifth Circuit, the supplemental records merely "track[ed] Rudolph's whereabouts within the Louisiana Department of Corrections" and provided that "Rudolph was incarcerated for various years." *Id.* Missing from the supplemental records was evidence "clearly attribut[ing] [the defendant's] incarceration to the 1996 conviction." *Id.*

The government does not address McKinley's invocation of *Rudolph* but, instead, provides supplemental records from the Louisiana Department of Probation & Parole, which seem to include information about McKinley's physical location and dates of sentencing.[20]

---

[20] *See* R. Doc. No. 49-1.

It also argues that McKinley's position "does not align with Louisiana law," because, pursuant to Louisiana Revised Statute 15:574.10, should a defendant be convicted of a felony while on parole:

> his parole shall be deemed revoked as of the date of the commission of the felony or such offense under the laws of the other jurisdiction. . . . The term for which the defendant shall be imprisoned as a parole violator shall be the same as that provided in cases of revocation of parole for violation of the conditions of parole. The new sentence of imprisonment shall be served consecutively to the term of imprisonment for violation of parole unless a concurrent term of imprisonment is directed by the court.[21]

Furthermore, the government directs the Court to Louisiana Revised Statute 15:574.6, which states that a defendant's parole term "shall be for the remainder of the offender's sentence." According to the government, the proper conclusion to derive from theses statutes, McKinley's incarceration records, and the PSR is that the 2007 cocaine conviction sentence obtained while he was on parole for his 1997 conviction "was ordered to be run concurrently to his parole revocation time, and ultimately [McKinley] was released from incarceration, for both his 1997 and 2007 convictions, on May 14, 2010."[22] To accept McKinley's position, argues the government, would mean to accept that his 1997 sentence ended when his parole was revoked, which "does not align with Louisiana law."[23]

---

[21] R. Doc. No. 49, at 5.

[22] *Id.*

[23] *See id.*

On April 1, 2026, the Court heard from the Custodian of Records for the Louisiana Department of Public Safety and Corrections, who gave testimony regarding the records provided by the government.

The Court agrees with the government. Louisiana Revised Statute 15:574.4.2 states, in relevant part: "[i]f parole is revoked for any reason . . . the parolee shall serve the remainder of the sentence as of the date of release on parole." Coupled with Louisiana Revised Statute 15:574.10, it is clear that a person convicted of a felony while on parole will have their parole revoked and be ordered to serve the remainder of their originally imposed sentence.

According to the PSR, McKinley's 1997 cocaine conviction resulted in a fifteen-year sentence of imprisonment.[24] The records attached to the PSR support that his parole was revoked with respect to this conviction on February 23, 2006.[25] Pursuant to Louisiana law, McKinley must have been ordered to serve the remainder of his fifteen-year sentence, unless and until he was again released on parole, which, in his case, did not occur until May 14, 2010.[26] Because McKinley must have been incarcerated as a result of the revocation of his parole with respect to the 1997 conviction, the fact that the 2007 conviction, the likely impetus for the parole revocation, has an identical parole release date supports the conclusion that the terms of imprisonment were served concurrently. *See* La. Rev. Stat. 15:574.10. Furthermore, even if his 2007 sentence ran consecutively to the remainder of his 1997

---

[24] R. Doc. No. 44 ¶ 40.

[25] *Id.*, *see also id.* at 33.

[26] *Id.* ¶ 40.

sentence,[27] there was sufficient time left with respect to McKinley's 1997 sentence to indicate that after his parole was revoked, he was still imprisoned for his 1997 conviction until May 14, 2010.

The ambiguity in *Rudolph* does not exist here. In *Rudolph*, the defendant was sentenced to only five years on his 1996 qualifying drug conviction. *Rudolph*, 103 F.4th at 359. Consequently, his 2004 conviction would not necessarily have resulted in revocation and, relatedly, incarceration; his 1996 sentence term would likely have expired in 2001. *Id.* at 361. Absent evidence indicating that the 2004 conviction actually resulted in revocation of his 1996 conviction, the fact that he was convicted in 2004 was insufficient to demonstrate that any period of incarceration thereafter was attributable to the 1996 conviction. *Id.* at 360–63.

In contrast, McKinley's 2007 conviction falls squarely within the fifteen-year sentence term imposed with respect to his 1997 conviction. Meaning, pursuant to Louisiana law, his parole would have been revoked for "the remainder of his sentence." La. Rev. Stat. 15:574.4.2, 15:574.10. More importantly, the records indicate his parole was in fact revoked with respect to his 1997 conviction on February 23, 2006[28] and indicate that he was incarcerated prior to his 2007 conviction.[29] The Custodian of Records' testimony explaining the meaning of the records is consistent with the government's position that McKinley was incarcerated until May 14, 2010,

---

[27] *See supra* note 32 and accompanying text ("The new sentence of imprisonment shall be served consecutively to the term of imprisonment for violation of parole unless a concurrent term of imprisonment is directed by the court.").
[28] *See* R. Doc. No. 49-1, at 7.
[29] *Id.* at 11.

because of the revocation of his 1997 conviction.[30] The Court therefore finds that the government has met its burden of demonstrating by a preponderance of the evidence that McKinley was incarcerated, at least partially, because of his 1997 cocaine conviction revocation within the fifteen-year lookback period. Accordingly, this conviction may serve as a predicate for application of the § 4B1.1 career offender enhancement. McKinley's objection is overruled.

### b.    McKinley has not satisfied the realistic probability test with respect to the § 4B1.1(a) career offender enhancement

McKinley argues that he is not a career offender, as contemplated by § 4B1.1(a), because his 1997 cocaine conviction is "categorically broader" than the current CSA and, therefore, cannot count toward the career offender enhancement.[31] Specifically, McKinley argues that Louisiana state law in 1997 criminalized a broader swath of conduct than the current CSA because "Louisiana's definition of cocaine and related substances [in 1997] included the cocaine-derivative substance Ioflupane, which the CSA expressly excludes from its definition of those same substances."[32]

The government responds that notwithstanding whether McKinley's state conviction is facially broader than the CSA, he is also required to satisfy the "realistic probability test."[33] Because McKinley "has presented no cases or examples of the State of Louisiana prosecuting a defendant for Ioflupane," the government argues

---

[30] *See also id.* at 7–11.
[31] *See* R. Doc. No. 42, at 8.
[32] *Id.* at 11.
[33] R. Doc. No. 49, at 3.

11

that he has failed to satisfy the realistic probability test and the enhancement is therefore warranted.[34]

McKinley does not address the government's argument in his reply. Nor does he otherwise provide additional support for this objection.[35]

The Court agrees that "a prior conviction cannot serve as a predicate offense" for purposes of a § 4B1.1 enhancement if it "criminalizes a greater swath of conduct than the elements of the relevant Guidelines offense." *United States v. Minor*, 121 F.4th 1085, 1089 (5th Cir. 2024) (citations omitted) (cleaned up). However, the Court also agrees with the government that "[w]hen the prior convictions are state offenses," the defendant must overcome the "additional wrinkle" of the "realistic probability test." *United States v. Edmond*, No. 24-30255, 2025 WL 2017287, at *2 (5th Cir. July 18, 2025).

Application of the realistic probability test requires that the defendant establish "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of the crime." *Id.* (quoting *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017)). "To show a realistic probability, an offender . . . must at least point to his case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (quoting *Castillo-Rivera*, 853 F.3d at 22 (citation omitted) (cleaned up)).

---

[34] *Id.*
[35] *See generally* R. Doc. No. 52.

McKinley has made no attempt to demonstrate that Louisiana ever enforced Louisiana Revised Statute § 40:964, Schedule II(A)(4), against a defendant for Ioflupane[36] and, therefore, he has failed to establish that his 1997 cocaine conviction cannot, as a matter of law, serve as a predicate offense for the career criminal enhancement. *Cf. id.* Accordingly, this objection is overruled.

### c.    Maintenance of a premises for purposes of manufacturing or distributing a controlled substance, § 2D1.1(b)(12)

The PSR applies a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12),[37] which applies a two-level increase "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." The corresponding application note to § 2D1.1(b)(12) states:

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

§ 2D1.1(b)(12), application note 17. "The Government has the burden of demonstrating by a preponderance of the evidence the facts necessary to support a

---

[36] *See* R. Doc. Nos. 42, 52.
[37] R. Doc. No. 44 ¶ 31.

13

Guidelines enhancement." *United States v. Le*, 126 F.4th 373, 378–79 (5th Cir. 2025) (quoting *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021)). "A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015).

The PSR explains that the enhancement was applied because McKinley "routinely directed the confidential informant to meet him . . . at 505 Ashlawn Street to conduct controlled purchases."[38] At least three such instances, on October 23, October 29, and November 4, 2024, are reflected in the PSR[39] and the factual basis signed by McKinley.[40] Therefore, given McKinley's "consistent narcotics distribution activities at 505 Ashlawn Street, the probation officer submits [that] the PSR accurately assessed the two level enhancement for maintaining a drug premises."[41]

McKinley objects to this enhancement on the ground that he did not "maintain" 505 Ashlawn as contemplated by the Sentencing Guidelines.[42] He argues that the evidence of the three controlled purchases reflect "at most, temporary influence" over the location during "a limited number of drug distributions . . . at a residence that he did not own, rent, or control, and that other individuals also used to buy, sell, and use

---

[38] *Id.* at 29.

[39] *Id.* ¶ 16.

[40] R. Doc. No. 37 ("factual basis"); *see also id.* at 1 ("To purchase the methamphetamine from McKinley, the [confidential informant] would make contact through a mobile phone and McKinley would direct the customer to com to his location at 505 Ashlawn.").

[41] R. Doc. No. 44, at 29.

[42] R. Doc. No. 42, at 13–14.

controlled substances."[43] He maintains that Fifth Circuit precedent requires more for the enhancement to apply.[44]

In response, the government argues that, despite McKinley focusing in his objection on the 505 Ashlawn Street residence, the enhancement is equally applicable if based on McKinley's residence at 4919 Shrimpers Row.[45] According to the PSR, McKinley used 505 Ashlawn Street to distribute narcotics and used "his residence" at 4919 Shrimpers Row to store narcotics.[46] The PSR also states that "[f]rom early 2024 until his arrest for the instant offense, [McKinley] resided alone at 4919 Shrimpers Row, Houma, Louisiana."[47]

Likewise, in the factual basis, McKinley admits that he listed 4919 Shrimpers Row as his residence with his probation officer.[48] As additional support that 4919 Shrimpers Row was McKinley's primary residence, the PSR asserts that surveillance of McKinley placed him at 4919 Shrimpers Row "during the night hours" and law enforcement had "observed a vehicle associated with [McKinley] parked at the residence."[49] The government also states in its opposition that "[w]hen law enforcement executed the search warrant at 4919 Shrimpers Row, they gained entry by using the key from defendant's keychain seized from his person."[50]

---

[43] *Id.* at 14–15.
[44] *Id.* at 13.
[45] *See* R. Doc. No. 49, at 5.
[46] R. Doc. No. 44 ¶ 31.
[47] *Id.* ¶ 70
[48] R. Doc. No. 37, at 3.
[49] R. Doc. No. 44 ¶ 19.
[50] R. Doc. No. 49, at 7–8.

15

As explained in the factual basis, found inside 4919 Shrimpers Row during execution of the search warrant were the following:

> approximately 1,814.3 grams of crack cocaine, 476.3 grams of heroin, and three firearms, an Industria Nacional de Armas Model 2, .38 caliber revolver, bearing serial number 006674, a Glock Model 19Gen5, 9 millimeter semiautomatic pistol, bearing serial number BVUF564, and a Smith & Wesson Model M&P 9 Shield EZ, 9 millimeter semiautomatic pistol, bearing serial number NET9794. Also located in 4919 Shrimpers Row was a Keurig mixer, digital scales, and a Pyrex bowl with a white substance residue suspected to be cocaine.[51]

McKinley admitted in his factual basis that he possessed the substances found at 4919 Shrimpers Row "with intent to distribute" them.[52]

The government submits that "this Court would not err in applying the § 2D1.1(b)(12) enhancement to [McKinley] based solely on his maintaining 4919 Shrimpers Row as the stash house location for his drug trafficking activities."[53] Alternatively, the government agrees with the PSR that application of the § 2D1.1(b)(12) enhancement based on McKinley's distributions at 505 Ashlawn Street is permissible.[54]

In his supplemental memorandum, McKinley points out that the PSR did not base the enhancement on 4919 Shrimpers Row and, therefore, the government's arguments based on this residence go "beyond the findings in the PSR and should be disregarded."[55] Further, even had the PSR relied on 4919 Shrimpers Row, McKinley

---

[51] R. Doc. No. 37, at 4.
[52] *See id.*
[53] R. Doc. No. 49, at 7.
[54] *Id.* at 9.
[55] R. Doc. No. 52, at 5.

contends that the application does not apply because the presence of narcotics at his residence does not establish that "drug trafficking constitutes a 'primary or principal' use of the premises."[56] He also reiterates the arguments he made in his objection regarding the 505 Ashlawn Street residence.[57]

First, McKinley cites no support for his position that the government's argument with respect to 4919 Shrimpers Row should be disregarded merely because it "goes beyond the findings in the PSR."[58] The Court may impose an upward enhancement where, as is true here, the defendant had knowledge of the facts supporting the enhancement. *Cf. United States v. Ramon*, 615 F. App'x 235 (5th Cir. 2015) (holding no plain error where the district court *sua sponte* applied the enhancement set forth in U.S.S.G. § 2D1.1(b)(12) because the defendant "had actual knowledge of the facts upon which the district court based the enhancement under § 2D1.1(b)(12)" and, therefore, "the Guidelines themselves put defense counsel on notice that all possible grounds for enhancement are on the table at a sentencing hearing" (internal alterations and citations omitted)); *United States v. Angeles-Mendoza*, 407 F.3d 742, 749 (5th Cir. 2005) ("[O]ur precedents . . . allow[] the court *sua sponte* to impose upward enhancements where the defendant had no explicit knowledge of the possibility of such an enhancement but was aware of its underlying facts.").

---

[56] *Id.* at 5 (quoting § 2D1.1 cmt. n. 17).
[57] *See id.* at 5–6.
[58] *See id.* at 5.

Consistent with Federal Rule of Criminal Procedure 32, McKinley was put on notice that the enhancement in § 2D1.1(b)(12) may apply because it was raised in the PSR,[59] and the facts upon which the government's arguments in relation to 4919 Shrimpers Row rely are contained in the factual basis, which McKinley signed and acknowledged as true.[60] The Court therefore finds that it may rely on either residence to support an application of § 2D1.1(b)(12). *See Ramon*, 615 F. App'x at 236 ("[W]hile 'the PSR is often conclusive, . . . final decision-making power must . . . reside with the district court, and the court must have sufficient flexibility to deal with factors not covered in the PSR or arising after its writing.'" (quoting *United States v. Knight*, 76 F.3d 86, 89 (5th Cir. 1996))).

McKinley does not dispute that he "maintained" the residence at 4919 Shrimpers Row as articulated in § 2D1.1(b)(12).[61] The unobjected to evidence in the record supports that he did.[62] *See also* § 2D1.1(b)(12) cmt. n. 17 ("[T]he court should consider . . . (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises."); *United States v. Wesley*, 123 F.4th 423, 428 (5th Cir. 2024) ("This circuit's applications of § 2D1.1 focus instead on access and control over the premises, particularly unrestricted and exclusive access.").

---

[59] R. Doc. No. 44 ¶ 31; *see also* FED. R. CRIM P. 32(d)(1)(A) ("The presentence report must . . . identify all applicable guidelines and policy statements of the Sentencing Commission.").

[60] *See* R. Doc. No. 49, at 7–9 (relying on McKinley's acknowledgements in the factual basis); *see also* R. Doc. No. 37 (signing every page of the factual basis).

[61] *See* R. Doc. No. 52, at 5–6.

[62] R. Doc. No. 44 ¶¶ 19, 31, 70.

McKinley instead disputes that the "primary or principal" use of 4919 Shrimpers Row was for "manufacturing or distributing a controlled substance."[63] Rather, he contends that 4919 Shrimpers Row "primarily serves an ordinary residential function and any drug activity is merely incidental."[64] He asserts that the government has failed to identify any "evidence that the location functioned as a base of operations for trafficking, such as prior drug sales, repeated storage of distribution quantities, or other ongoing drug activity at the property."[65]

Jurisprudence recognizes that "there can be more than one primary use of a building for purposes of evaluating the enhancement." *United States v. Lopez*, 750 F. App'x 349, 351 (5th Cir. 2018); *see also United States v. Gutierrez-Munoz*, No. 21-40903, 2022 WL 5102009, at *1 (5th Cir. Oct. 4, 2022) ("§ 2D1.1(b)(12) only requires that *one* of the defendant's *primary or principal uses* for the premises be drug distribution." (emphasis in original) (internal quotations omitted)). "The premises need not be used exclusively for the manufacturing or distribution of a controlled substance, but such drug activity must be a primary or principal use, rather than merely an incidental or collateral use." *Lopez*, 750 F. App'x at 351 (cleaned up).

The application note to the enhancement makes clear that it applies to a defendant that maintains the property for "*storage* of a controlled substance for the purpose of distribution." § 2D1.1(b)(12) cmt. n. 17 (emphasis added); *Le*, 126 F.4th at 378. "A defendant's additional use of a premises as a family home is not necessarily

---

[63] R. Doc. No. 52, at 5.
[64] *Id.*
[65] *Id.*

19

fatal to application of § 2D1.1(b)(12), so long as facts in the record support that storage of the controlled substance was 'one of the defendant's primary or principal uses for the premises.'" *Id.* at 352 (quoting *United States v. Carrillo*, 689 F. App'x 334, 335 (5th Cir. 2017)) (cleaned up); *see also United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020) (finding that the defendant's "premises had at least two primary uses: (1) as his residence, and (2) as a storage site for drug distribution. These primary uses need not be equivalent. [The defendant] may have lived in the premises and raised his family there for thirty-five years, but we agree with the district court that the premises were eventually used on a continuing basis for the storage and distribution of drugs.").

In determining the primary or principal use, the court considers "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." § 2D1.1(b)(12) cmt. n. 17. "The evidentiary bar for establishing a primary use has not been set high." *Galicia*, 983 F.3d at 844 (internal quotations omitted).

With respect to 4919 Shrimpers Row, the Court finds that the evidence supports application of the enhancement. Drugs, firearms, drug paraphernalia, including a Keurig mixer, digital scales, and a Pyrex bowl with suspected cocaine residue, were found during the execution of the search warrant.[66] McKinley admitted in his factual basis that this "mixer, scale, and bowl, along with the illegal narcotics

---

[66] *See* R. Doc. No. 44, at 7–8.

being packaged in multiple clear plastic bags, is indicative of drug trafficking and the defendant agrees he possessed this cocaine and fentanyl with intent to distribute it."[67] On at least three occasions, a confidential informant purchased methamphetamine from McKinley at 505 Ashlawn Street.[68]

The Fifth Circuit has upheld a district court's application of § 2D1.1(b)(12) in comparable scenarios. *See, e.g., Lopez*, 750 F. App'x at 352 (affirming the district court's determination that drug distribution was a primary purpose of [the defendant's] residence "based on the paraphernalia, the digital scale, and the amount of drugs found in various parts of the house and on the property"); *United States v. Castro*, 159 F.4th 955, 960 (5th Cir. 2025) (finding sufficient for application of the enhancement that the defendant stored drug *proceeds* at his residence, even where there was no indication that drugs or drug paraphernalia was stored at the residence); *United States v. Fonseca*, 834 F. App'x 75, 79 (5th Cir. 2020) ("[W]hile the PSR does not identify the precise number of times that [the defendant] stored narcotics at his residence, the PSR makes it clear—and the [defendant] admits—that this was not the first time he had stored drugs [there].").

Based on the foregoing, the Court finds that the evidence supports that one of McKinley's primary purposes for maintaining 4919 Shrimpers Row was to store controlled substances for the purpose of distribution. Accordingly, application of § 2D1.1(b)(12) is proper.[69]

---

[67] R. Doc. No. 37, at 4.

[68] R. Doc. No. 44 ¶ 16.

[69] Having so decided, the Court need not reach the issue of whether McKinley

21

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that McKinley's objections to the Presentence Investigation

Report are **OVERRULED**, consistent with the Court's rulings herein.

New Orleans, Louisiana, April 1, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

sufficiently maintained 505 Ashlawn Street such that application of the enhancement based on 505 Ashlawn Street is appropriate. However, the Court notes that the evidence is consistent with a finding that McKinley exercised sufficient control over 505 Ashlawn to establish that he "maintained" the residence for purposes of the enhancement. *Cf. Wesley*, 123 F.4th at 428–29 ("[The defendant] had a key, distributed drugs alone from the home without the aid of others, and was seen using the home multiple times. . . . In addition to possessing a key, [the defendant] conducted drug deals at the [subject] home on June 17, 2022, June 22, 2022, and July 6, 2022, and was present nearby when law enforcement searched the residence on June 18, 2022." (internal quotations omitted)); *see also* R. Doc. No. 44 ¶ 16 (The [confidential informant] . . . indicated he or she would contact the defendant through a mobile phone and the defendant would direct the CI to his . . . location at 505 Ashlawn Street.").